**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2020

(Submitted: January 20, 2021          Decided: July 28, 2021
                                     Amended: July 28, 2021)

Docket No. 17-2368

_____

AMARDEEP SINGH,

*Petitioner*,

v.

MERRICK B. GARLAND, United States Attorney General,[*]

*Respondent*.

_____

Before:

KEARSE, LEVAL, and CARNEY, *Circuit Judges*.

Petitioner seeks review of an order of the Board of Immigration Appeals affirming the decision of the Immigration Judge, which, on adverse credibility grounds, denied Petitioner asylum, withholding of removal, and relief under the Convention Against Torture. The petition for review is GRANTED, the order of the Board of Immigration Appeals is VACATED, and the case is REMANDED.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland is automatically substituted as Respondent.

AMY NUSSBAUM GELL, Gell & Gell, New York, NY, *for Petitioner.*†

BRYAN BOYNTON (Chad A. Readler, *on the brief*), Acting Assistant Attorney General; JOHN S. HOGAN, Assistant Director; ROBBIN K. BLAYA, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent.*

LEVAL, *Circuit Judge*:

Amardeep Singh, a native and citizen of India seeking relief from political persecution in his home country, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ"), which, on adverse credibility grounds, denied Singh asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ relied on four instances of what the IJ perceived as "inconsistencies" to support her finding that Singh was not credible. The BIA affirmed, finding no clear error in the IJ's decision. *See In re Amardeep Singh*, No. A 208 179 532 (B.I.A. July 10, 2017), *aff'g* No. A 208 179

---

† After Petitioner's counsel briefed this appeal, the Court granted her request to withdraw from the Court's bar in connection with an attorney grievance matter that resulted in the issuance of a reprimand. *See In re Gell*, 813 F. App'x 706, 707 (2d Cir. 2020). While counsel did not withdraw from representing Petitioner, we consider him to be pro se.

532 (Immig. Ct. N.Y. City Sept. 29, 2016). We conclude that the IJ and BIA erred in treating three of the four instances of perceived inconsistencies as casting doubt on Singh's credibility. They did not involve inconsistency, at least not of the sort that can reasonably support doubt about the speaker's credibility. Although the fourth instance, unlike the first three, did indeed involve inconsistency, the inconsistency related to a trivial detail. This trivial inconsistency by itself, without more, could not reasonably justify finding Singh not credible. The IJ's ruling was thus not supported by substantial evidence. We therefore grant the petition, vacate the decision of the BIA, and remand for further proceedings.

**BACKGROUND**

In 2015, Singh, a native and citizen of India, entered the United States without valid immigration documents and was placed in removal proceedings. He conceded removability and timely applied for asylum, withholding of removal, and CAT relief on the basis of political persecution in his home country.

Singh asserted that he was an active member of Shiromani Akali Dal Amritsar ("SADA"), a political party that advocates for the rights of Sikhs in

India, and that he had twice been attacked by members of rival political parties and/or police because of this political affiliation. Singh reported the first attack to the police, but the police did not investigate. Singh did not report the second attack to the police because "they did not help [him] the first time" and "were also involved in beating [him] up." Cert. Admin. R. at 591-92.

In support of his application, Singh testified at a hearing before the IJ and submitted affidavits from friends, neighbors, family, and his local Municipal Councilor. He also submitted letters from an attorney with whom he had consulted in India and from Simranjit Singh Mann, the president of SADA, as well as articles and reports concerning police violence and human rights abuses perpetrated against Sikhs in India.

The IJ ultimately denied all relief on credibility grounds and ordered Singh removed to India. In her September 29, 2016 order, the IJ identified four aspects of Singh's evidence that she believed to be inconsistencies supporting her conclusion that Singh lacked credibility.

First, the IJ noted that Singh testified at his hearing that he had spoken with SADA President Mann after both attacks, but that these conversations

were not mentioned in Singh's written asylum statement. *Id.* at 168. Second,

the IJ pointed out that Mann's letter in support of Singh's application, which

described the persecution suffered by Sikhs in India, similarly made no

mention of Singh's visits to Mann to tell Mann of the beatings Singh had

suffered. *Id*. When confronted with these facts at the hearing, Singh explained

that the omission from his statement was a mistake and that the omission

from Mann's letter may have been due to the fact that Mann "is a very busy

person, who meets many workers in a day" and so the conversations may

have "slipped his mind." *Id.* The IJ rejected Singh's explanations because the

conversations occurred "on two separate occasions" and related to "incidents

of violence." *Id.* The IJ considered the omissions significant "because [they]

relate[d] to [Singh's] relationship to his party leader" and "what actions

[Singh] took to report the incidents of persecution to the leader of his own

party." *Id.*

Third, the IJ found that Singh's testimony was "undermined" by an

inconsistency she found in a letter from N.S. Noor, an attorney with whom

Singh had consulted in India after the attacks. *Id*. at 169. The attorney's letter

stated that "[i]n accordance with the information on old diary of events for

5

2014," Singh and his father had visited the attorney "to discuss any remedy"

Singh might have against his attackers. *Id*. at 528. The attorney wrote,

> Mr. Amardeep told me that he was first beaten up mercilessly by congress party workers. . . . Second time, *I* was beaten up mercilessly by the members of SAD (Badal) as well as B.J.P. Party workers.

*Id.* (emphasis added).

The IJ found that Attorney Noor's use of "I" in identifying the victim of the second attack meant that the second attack was perpetrated against the attorney and not against Singh, further undermining Singh's credibility. When questioned at the hearing about the attorney's use of the pronoun "I" instead of "he," Singh testified that the attorney was referring to Singh being beaten and that the use of the word "I" was "maybe . . . a typo or something written by mistake." *Id*. at 229. The IJ rejected Singh's explanation that this was a mistake, reasoning that "the attorney supposedly knew that this letter was going to be submitted directly to a court in the United States" and thus "would strive to present a document that was accurate . . . ." *Id*. at 169.

Finally, the IJ found that Singh's testimony was inconsistent with an affidavit from Des Raj Jassal, a Municipal Councilor in India, in which Jassal asserted that he had accompanied Singh and Singh's father to the police

6

station after the first attack. This was inconsistent with Singh's hearing testimony that Singh went to the police station accompanied only by his father. When asked about this inconsistency, Singh asserted that his testimony was correct and that Jassal had not accompanied Singh and his father, but that Jassal had been provided with all of the information regarding the attack. The IJ rejected this as "not an explanation for the inconsistency" and concluded that the inconsistency "was significant because it relates to the aftermath of the alleged persecution and whether and by whom the police were notified." *Id.* at 167-68.

The IJ found no other basis for doubting Singh's credibility. The BIA affirmed the IJ's decision, finding no clear error in the IJ's determination that Singh was not credible, and concluding that the "concerns" raised by these inconsistencies were not sufficiently counterbalanced by other evidence in the record to rehabilitate Singh's credibility. *Id*. at 3-5.

In this petition for review, Singh challenges the adverse credibility finding, arguing that the agency's reliance on minor inconsistencies was error.[1]

## DISCUSSION

### I. Standard of Review

Where the BIA and IJ reach the same conclusion on credibility, we review the decisions together, considering the reasoning provided by both the IJ and BIA and ignoring any grounds relied on by the IJ that were "explicitly rejected by the BIA." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018).

Pursuant to 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to

---

[1] Singh also argues that the IJ ignored evidence and failed to properly consider his risk of future persecution. We find these arguments without merit. Singh asserts that the IJ failed to consider a supplemental affidavit from his Municipal Councilor, but as the BIA noted, that affidavit was submitted after the IJ had closed the record. Cert. Admin R. 4. The IJ is entitled to set filing deadlines and reject untimely filings. *See Dedji v. Mukasey*, 525 F.3d 187, 191 (2d Cir. 2008) ("An IJ has discretion to set deadlines for the submission of documents . . . [and] [w]hen a document has been deemed untimely filed, the opportunity to file that document shall be deemed waived." (internal quotation marks and ellipses omitted)). As for Singh's argument that the agency failed to consider his risk of future persecution, the IJ's decision explicitly stated that the adverse credibility finding also "extend[ed] to any future fear that [Singh] might allege[.]" Cert. Admin R. at 170.

conclude to the contrary." This language presents special problems when the finding of fact is an adverse credibility determination. If read literally, that standard would virtually never permit courts to set aside an adverse credibility finding because hardly ever is there a circumstance in which a fact finder is compelled to find a witness credible, especially as credibility determinations may be based on "demeanor" alone. 8 U.S.C. § 1158(b)(1)(B)(iii).

This literal reading of the "unless . . . compelled" standard, however, would be inconsistent with the statutory mandate in 5 U.S.C. § 706(2)(e), which requires a reviewing court to "set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence . . . ." These two standards would be at odds because a literal reading of the "unless . . . compelled" standard would insulate an adverse credibility finding from review, even where the reason provided furnishes no rational support for the finding, while the latter standard requires that findings without substantial evidentiary support be set aside.

While our Court has frequently cited the "unless . . . compelled" standard in decisions upholding adverse credibility findings, *see, e.g.*, *Xiu Xia*

*Lin v. Mukasey*, 534 F.3d 162, 165-67 (2d Cir. 2008) (per curiam); *Shu Wen Sun v. BIA*, 510 F.3d 377, 379–80 (2d Cir. 2007) (per curiam); *Majidi v. Gonzales*, 430 F.3d 77, 79–80 (2d Cir. 2005), in numerous circumstances we have made clear, when rejecting adverse credibility findings, that the "unless . . . compelled" standard does not apply literally, *see, e.g.*, *Jhok Bahadur Gurung v. Barr*, 929 F.3d 56, 60-61 (2d Cir. 2019); *Hong Fei*, 891 F.3d at 76-77, 79-80; *Kone v. Holder*, 596 F.3d 141, 146, 150-51 (2d Cir. 2010); *Pavlova v. INS*, 441 F.3d 82, 87-88, 91 (2d Cir. 2006). Our Court has recently and repeatedly explained that the "unless . . . compelled" standard demands the same level of evidentiary support as the substantial evidence standard, "which requires that [factual findings] be supported by reasonable, substantial and probative evidence in the record when considered as a whole." *Hong Fei*, 891 F.3d at 76 (internal quotation marks omitted); *see also Gurung*, 929 F.3d at 60 ("Our Court has interpreted th[e] statutory standard [in 8 U.S.C. § 1252(b)(4)(B)] to mean that the IJ's factual findings—including her adverse credibility determinations— merit deference so long as they are supported by substantial evidence.").

The problem arising from application of the statutory "unless . . . compelled" standard to adverse credibility findings was carefully and

extensively discussed in our recent opinion in *Hong Fei*, 891 F.3d at 76-79.

Judge Chin there explained that, while "we afford particular deference to the IJ's adverse credibility determination, the fact that an IJ has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Id*. at 76 (internal quotation marks omitted). Rather, a reviewing court "must assess whether the agency has provided specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the finding." *Id*. at 77 (internal quotation marks omitted). Thus, the "unless . . . compelled" standard requires that the IJ articulate "specific" and "cogent" reasons for finding an applicant not credible, that the reasons provided by the IJ "be supported by reasonable, substantial and probative evidence in the record when considered as a whole," and that they "bear a legitimate nexus to the [adverse credibility] finding." *Id.* at 76-77 (internal quotation marks omitted). This standard, while appropriately deferential, nonetheless requires that an IJ's reasons for finding an applicant not credible be both (1) supported by substantial evidence in the record and (2) logically related to the applicant's credibility. Where the agency found an applicant not credible on the basis of grounds that do not

provide substantial reasonable support for the finding, that finding would be subject to judicial review and would be set aside. This interpretation of the "unless . . . compelled" standard reconciles it with the mandate of 5 U.S.C. § 706(2)(e).

We fully recognize that credibility determinations may be based on any inconsistencies, inaccuracies, or falsehoods, "without regard to whether [the] inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). But it does not follow that an adverse credibility finding may be based on an inconsistency so trivial and inconsequential that it has little or no tendency to support a reasonable inference that the petitioner has been untruthful. Such an inconsistency bears no legitimate nexus to credibility and thus cannot, on its own, constitute the substantial evidence needed to support an adverse credibility finding. *See Hong Fei*, 891 F.3d at 77 ("A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination.").[‡]

---

[‡] There are, of course, circumstances in which multiple seemingly minor inconsistencies are sufficient, when viewed cumulatively, to support a reasonable inference of untruthfulness, even if one of them in isolation would have been insufficient.

Where an IJ relies solely on erroneous bases in reaching an adverse credibility determination, or where the remaining non-disqualified bases are legally insufficient to satisfy the substantial evidence requirement, that finding cannot stand. *See* 5 U.S.C. § 706(2)(e). Where, however, an IJ relies on multiple bases, some of which are erroneous and the remainder of which are, when viewed together, legally sufficient to satisfy the substantial evidence requirement, several different dispositions are possible, depending on how powerfully the permissible bases support the adverse credibility finding. Where the remaining grounds supporting the adverse credibility finding are sufficiently probative of untruthfulness, the reviewing court might simply affirm the ruling based on confidence that the agency would adhere to the adverse credibility finding notwithstanding disqualification of some of its asserted bases. In contrast, where the major support for the adverse credibility conclusion is found to be legally erroneous, and therefore disqualified, and the reviewing court cannot confidently predict whether the agency would adhere to the determination absent the errors, the reviewing court would remand for the agency to reconsider the question. *Hong Fei*, 891 F.3d at 82. Finally, where it is clear that the agency would not adhere to the

adverse credibility finding absent the errors identified on review, that finding would be set aside.

**II.    Application**

With the foregoing principles in mind, we review the agency's reasons for the adverse credibility finding. Three of the four aspects of Singh's evidence found by the IJ to suffer from inconsistency were not reasonably considered inconsistencies and furnished no evidentiary support for the conclusion that Singh was untruthful. The fourth presented an inconsistency so trivial and so lacking in logical support for a finding of fabrication, that it could not, on its own, constitute substantial evidence to support a finding that Singh was not credible.

*A. Singh's Omission of Post-Attack Conversations with Mann*

The IJ's reliance on the omission from Singh's asylum statement of his post-attack conversations with Mann was error because the omission did not contradict or undermine Singh's account and had no bearing on his credibility. There was no reason for Singh to mention the conversations in his asylum statement because they were not part of what Singh was undertaking to communicate.

While we have stated in dicta that, under some circumstances, omissions and inconsistencies are "functionally equivalent," *Xiu Xia*, 534 F.3d at 166 n.3, we have also explained that "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony," *Hong Fei*, 891 F.3d at 78 (internal quotation marks omitted). Omissions are undoubtedly probative of untruthfulness in circumstances where the omission renders what is stated untrue or deceitful, but not necessarily so where the omission constitutes nothing more than non-inclusion of an inessential fact. *See id*. at 79.

As between two tellings of a story, the fact that the later telling includes details not included in the first does not necessarily render the two tellings inconsistent or cast doubt on the speaker's credibility. Whether the two such statements are inconsistent depends in part on the importance that the omitted fact would have had for the purpose of the earlier telling. It may also depend on the extent to which the first statement, which excluded a detail contained in the second statement, purported to be a complete and exhaustive account containing all relevant details. In many circumstances, a fact later asserted by a petitioner but omitted from his earlier statement can be of such

importance to the purpose of the earlier statement that its omission makes the two tellings inconsistent and legitimately casts doubt on the veracity of the later addition. Thus, in a hypothetical case, a petitioner who later claims to have been brutally beaten but omitted any reference to a beating from his earlier description of his persecution (there mentioning only less brutal conduct such as a slap in the face), can be properly found to have made inconsistent statements and to have fabricated the later assertion because the fact of the beating would have been so important to his earlier claim that he would have been expected to have included it in the earlier statement. On the other hand, the less importance the omitted fact would have had to the objective of the statement from which it was omitted, the less the two statements can be seen as inconsistent or as supplying a basis for doubting veracity. We have therefore ruled that a petitioner's divulgence of previously omitted details regarding the aftermath of his persecution, which are "supplementary, not contradictory" to the petitioner's account, should not necessarily be "characterized . . . as inconsistencies." *Id*. at 79.

The fact that Singh told Mann about the beatings bore little or no importance to Singh's asylum statement. The purpose of Singh's asylum

statement was to set forth the basis for his claim of eligibility for asylum—that he suffered "persecution due to [his] affiliation with the Sikh political party [SADA]" and that the police both participated in the abuse and failed to help him. Cert. Admin. R. 479. In furtherance of that objective, he described two savage beatings he suffered at the hands of police and members of rival political parties, including being abducted by six men and beaten "with baseball bats until [he] passed out." *Id*. at 480. Singh's later telling Mann about the attacks was not a part of his persecution or his eligibility for asylum, and Singh was not expected, let alone required, to recount these post-persecution conversations in his asylum statement. *See Hong Fei*, 891 F.3d at 80 ("[A]sylum applicants are not required to list every incident . . . that occurs in the *aftermath* of the alleged persecution [in their asylum statements]." (internal quotation marks omitted) (emphasis in original)).

There was little reason for Singh to include the conversations with Mann in his asylum statement, and his failure to do so does not furnish any logical support for the inference that his later mention of having told Mann about the attacks (or any aspect of his statement) was a fabrication. Singh likely told many people about the beatings he endured without then

mentioning each of those conversations in his asylum statement, but his not mentioning all of those conversations in his asylum statement does not logically suggest that he fabricated the narrations.§ Moreover, that Singh notified his party leader of the attacks reinforces, rather than undermines, his claim of political persecution. *See id.* at 79.

Singh's testimony regarding the post-attack conversations with Mann provided "supplementary, not contradictory," details regarding the "aftermath of the alleged persecution," and the IJ erred to the extent she characterized this omission as an inconsistency supporting a finding that Singh lacked credibility. *See id*. at 79-80 ("[T]he IJs erred to the extent that they characterized . . . omissions [regarding medical treatment sought in the aftermath of persecution] as inconsistencies."); cf. *Xiu Xia*, 534 F.3d at 166 n.3.

---

§ For example, in support of his application, Singh submitted affidavits of six members of his community, commenting on the beatings Singh endured because of his political affiliation, Cert. Admin. R. 511-27, and these six people most likely learned of the beatings from Singh. Singh did not include in his asylum statement that he had told those six people of the beatings. The implicit acknowledgment by those six people that they learned from Singh of his beatings without his having acknowledged telling them in his statement does not in any way support an inference of subsequent fabrication. The same is true of Singh's not having included in his statement the fact of his having told Mann. That fact does not in any way support an adverse credibility inference. The post-attack conversations were of little or no importance to the purpose of the asylum statement.

### B. Mann's Omission of Post-Attack Conversations with Singh

The IJ further erred in discrediting Singh based on Mann's not stating in his letter that Singh had come to see him to tell of the beatings Singh had suffered. The purpose of Mann's letter was to report on the brutal treatment that Sikhs and members of SADA receive in India, supporting the likelihood that Singh, as a Sikh and SADA member, would face persecution on returning to India. Mann had not witnessed the beatings Singh experienced. He was not in a position to attest to the veracity of Singh's account of his beatings, and did not undertake to do so. His letter did not mention those facts. The fact that Singh had come to see Mann to tell Mann about his personal experiences had little importance for the general message of Mann's letter about the widespread persecution of Sikhs. Mann's omission of his conversation with Singh in no way undermined the credibility of Mann's message or of Singh's account of his persecution.

Nor was the adverse credibility finding in any way supported by what the IJ found to be the inadequacy of Singh's explanation, when asked, why Mann had failed to mention the post-attack conversations in his letter. *See Hong Fei*, 891 F.3d at 81 ("[W]here a third party's omission creates no *inconsistency* with an applicant's own statements—an applicant's failure to

19

explain third-party omissions is less probative of credibility . . . ."). Singh was not in a position to know why Mann did not mention their conversation. He could only guess. The fact that the IJ was unimpressed by his guess in no way undermined Singh's credibility.

### C. Attorney's Use of "I" in Referring to the Victim of the Second Attack

The IJ also erred in finding that Singh's credibility was undermined by a letter from an attorney in India with whom Singh had consulted after the attacks. Attorney Noor's letter, as described above, said, "Mr. Amardeep told me that he was first beaten up mercilessly by congress party workers. . . . Second time, I was beaten up mercilessly by the members of SAD (Badal) as well as B.J.P. Party workers." Cert. Admin. R. 528. The attorney's use of "I," instead of "he," in referring to the victim of the second attack, was undoubtedly a simple mistake.

The IJ construed the letter's use of "I" with respect to the second attack as meaning that the attack was perpetrated against the lawyer and not against Singh, and that Singh was falsely claiming to have been the victim of an attack that was in fact made on the lawyer. That is not plausible in the circumstances. It is clear that the lawyer's letter was describing Singh's

20

narration of what had happened to Singh and not telling the lawyer's own personal misfortunes.

The fact that Attorney Noor's use of "I" was a mistake and not a statement of brutalities endured by the lawyer is shown by analysis of the structure of Noor's letter. The paragraph in question first states that Singh and his father visited the attorney "to discuss any remedy against the congress party workers and Shiromani Akali Dal (Badal)+B.J.P. party workers and Police accusation." *Id*. This passage refers to Singh's identification of the three abusers against whom Singh sought a "remedy": 1) Congress Party workers; 2) Shiromani Akali Dal (Badal) and B.J.P. Party workers; and 3) the police. The next three sentences describe the substance of Singh's complaint against each of the three subjects named as possible sources of a remedy. First, as to Congress Party workers, it states: "[Singh] told me that he was first beaten up mercilessly by congress party workers." *Id*. Next, as to police, the following sentence continues: "[Singh] and his father went to the Police Station to lodge [a] complaint/FIR against the culprits but the Police did not register the case against the said culprits and rather misbehaved with them." *Id.* Finally, in the third sentence, which relates to Singh's allegation of abuse

by the Shiromani Akali Dal (Badal) and B.J.P. Party workers, the letter states,

"Second time, I was beaten up mercilessly by the members of SAD (Badal) as

well as B.J.P. Party workers." *Id*. The context makes clear that this last

sentence undertook to summarize Singh's complaint against the Shiromani

Akali Dal (Badal) and B.J.P. Party workers, and was not a departure by the

lawyer from writing about client Singh's complaints to venting the grievances

the lawyer had, by coincidence, against the very same entities against whom

Singh was seeking a remedy.

In the context of the overall letter, the IJ's interpretation of it as

describing one attack against Singh and a second attack against Attorney

Noor was not within the realm of reason; this perceived inconsistency gave

no substantial support, indeed no support at all, to the IJ's adverse credibility

finding.

The IJ's rejection of Singh's proffered explanation that the lawyer made

a mistake on the ground that the lawyer, knowing that his letter would be

presented to a court in the United States, would have taken all necessary

pains to avoid making a mistake is equally devoid of reason. It is not unusual

for lawyers to prepare documents to be presented to a court, and they

occasionally make mistakes. In the context, it was not within the scope of a fact-finder's discretion to treat this use of "I" as intending to describe a beating endured by the lawyer rather than the client about whom the lawyer was writing.

While it is true that petitioners "must do more than offer a 'plausible' explanation for . . . inconsistent statements to secure relief," *Zhou Yun Zhang v. United States INS*, 386 F.3d 66, 76 (2d Cir. 2004), they need not explain away inconsistencies that do not exist, *see Gurung*, 929 F.3d at 61. In this instance, while there was a superficial appearance of inconsistency resulting from what was obviously a mistake, it was overwhelmingly clear that the appearance of inconsistency between Singh's testimony and the attorney's letter was not a genuine inconsistency and furnished no reasonable basis for doubting Singh's credibility.

### D. Inconsistency Regarding Who Accompanied Singh to the Police Station

Finally, the IJ relied on the inconsistency between Singh's testimony that, after the first attack, he visited the police station accompanied only by his father and the statement in Jassal's affidavit that Jassal accompanied Singh and his father to the police station. When Singh was confronted with the

inconsistency on cross-examination, he asserted that his testimony was correct and that Jassal's statement was inaccurate. Cert. Admin R. 224.

Unlike the other three instances found by the IJ, this is indeed an inconsistency. We recognize, furthermore, that a single inconsistency in a petitioner's evidence, even one that does not go to the heart of a petitioner's claim, can justify an adverse credibility finding, and can combine with other factors casting doubt on credibility to support an adverse credibility finding. But it does not follow that every instance of inconsistency is by itself sufficiently probative of dishonesty to satisfy the substantial evidence requirement. *See Hong Fei*, 891 F.3d at 77. In this instance, neither the IJ nor the BIA purported to find Singh not credible based solely on this inconsistency. They relied on the combined force of four inconsistencies, as to which we have concluded that three of the four were neither genuine inconsistencies nor permissible bases for doubting Singh's credibility.

Because three of the four bases for the adverse credibility finding are disqualified, we consider whether the only remaining basis can support the substantial evidence requirement, and if so, whether the agency would adhere to the adverse credibility finding relying on that basis alone. These

issues depend on an evaluation of pertinent factors. The more serious the inconsistency—*i.e.*, the greater the importance of the fact upon which inconsistency is found for the success of the petition and the more likely it is that a truthful account would not have included the inconsistency—the more substantial that evidence is in casting doubt on the petitioner's credibility. By the same token, the more trivial and inconsequential the inconsistency, and the more likely it is that the inconsistency has an innocent explanation such as mistake, or differing perceptions, rather than dishonesty (especially on the part of the applicant), the less support that inconsistency provides for an adverse credibility finding.

In view of the insignificance of whether Jassal did or did not accompany Singh and his father when they went to the police station, and the high likelihood that the inconsistency is attributable to an innocent explanation, such as mistake or differing recollections or perceptions, this inconsistency gave no substantial support to the proposition that Singh fabricated his claim or any part of it. It therefore would not comply with the substantial evidence requirement of 5 U.S.C. § 706(2)(e) and 8 U.S.C. § 1252(b)(4)(B) for the agency to base its adverse credibility finding on this

inconsistency alone. We further conclude that, even if the trivial inconsistency with Jassal were legally sufficient to support the adverse credibility finding, the agency would not have adhered to that finding in light of the errors we have identified.

Without the adverse credibility finding, the agency gave no reason for rejecting Singh's petition. We therefore vacate the agency's ruling and remand for further proceedings.

## CONCLUSION

For the foregoing reasons, we GRANT the petition, VACATE the decision of the BIA, and REMAND the case to the BIA for further proceedings consistent with this opinion.