19-715-ag
Chen v. Garland

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2022

(Submitted: November 18, 2022          Decided: July 25, 2023)

Docket No. 19-715-ag

———————————————————

ZHI BO CHEN, AKA ZHIBO CHEN, AKA CHEN ZHIBO, AKA BO LIN,

*Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

———————————————————

Before:

JACOBS, LOHIER, and NATHAN, *Circuit Judges*.

Zhi Bo Chen petitions for review of an order of the Board of Immigration Appeals (BIA) affirming a decision of an Immigration Judge (IJ) that denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture, and ordered him removed from the United States. The IJ's decision was based, in part, on its finding that Chen was not credible. Because certain reasons for that credibility finding were erroneous, and because we cannot be confident that the IJ would have made the same determination absent those errors, Chen's petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

Gary J. Yerman, The Yerman Group, LLC, New York, NY, *for Petitioner* Zhi Bo Chen, AKA Zhibo Chen, AKA Chen Zhibo, AKA Bo Lin

Jennifer A. Bowen, Trial Attorney (Joseph H. Hunt, Assistant Attorney General, Anthony C. Payne, Assistant Director, *on the brief*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent* Merrick B. Garland, United States Attorney General

LOHIER, *Circuit Judge*:

Petitioner Zhi Bo Chen petitions for review of a March 8, 2019 order of the Board of Immigration Appeals (BIA) affirming a November 20, 2017 decision of an Immigration Judge (IJ) that denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The IJ determined that Chen was not credible based on inconsistencies in his testimony during his removal hearing and omissions in his original applications for asylum and withholding of removal on Form I-589, which asks applicants to provide information about their personal and family backgrounds and details about the harm or mistreatment that they experienced in their home country. We conclude that the IJ misidentified part of Chen's testimony as inconsistent, improperly relied on trivial inconsistencies, and misconstrued as an omission a part of

Chen's testimony that comported with his Form I-589 asylum statement. Because we are not confident that the IJ would have made the same adverse credibility determination absent those errors, Chen's petition for review is **GRANTED**, the BIA's decision is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

On November 20, 2017, Chen, a native and citizen of China, testified as follows before the IJ in support of his applications for asylum, withholding of removal, and protection under the CAT. Considered an illegal cult, Falun Gong is banned by the Chinese government. Chen began secretly practicing Falun Gong in China in 2009. In September 2010 police officers came to Chen's home, arrested him for practicing Falun Gong, and took him to a police station. At the station the officers locked him in a dark room and then interrogated and beat him. A week later, the officers released Chen after instructing him to report back to the police station every month and to avoid Falun Gong–related activities. When Chen returned to the police station in October 2010 as instructed, however, police officers again detained, interrogated, and beat him. Fearing further persecution in China, Chen fled to the United States, where he continues to

3

practice Falun Gong. Even after Chen fled, however, Chinese police officers continued to search for him at his mother's home.

In support of his applications for asylum, withholding of removal, and CAT relief, Chen submitted, among other documents, a Form I-589 and affidavits from his wife and cousin. Chen and his wife also testified before the IJ at Chen's removal hearing.

After the hearing, the IJ pretermitted Chen's asylum application because it determined that Chen had not demonstrated by clear and convincing evidence that it was timely filed. The IJ also denied Chen's applications for withholding of removal and relief under the CAT because it determined that Chen was not credible. The IJ based its adverse credibility finding on inconsistencies between his Form I-589 and the hearing testimony, and the fact that Chen's testimony contained information that he had omitted from his Form I-589.

After the IJ ordered Chen removed from the United States, Chen appealed to the BIA, which affirmed the IJ's adverse credibility finding and dismissed his appeal.

This petition followed.

DISCUSSION

**I.** **Applicable Law**

"Where, as here, the BIA's decision affirms the IJ's adverse credibility finding without rejecting any portion of the IJ's decision, but emphasizing particular aspects of the reasoning, we review both decisions." Xiao Xing Ni v. Gonzales, 494 F.3d 260, 262 (2d Cir. 2007). "We review the agency's findings, including credibility findings, for substantial evidence, treating the agency's findings as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation marks omitted).

Chen applied for asylum, withholding of removal, and relief under the CAT. "To qualify for asylum," Chen was required to "show that he is a 'refugee' — that is, he is 'unable or unwilling to return to [his home country]'" of nationality "'because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Pinel-Gomez v. Garland, 52 F.4th 523, 528 (2d Cir. 2022) (alterations in original) (quoting 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(B)(i)). To be eligible for withholding of removal, Chen must satisfy a stricter standard—one that requires "a clear probability of future persecution on

account of a protected characteristic." Hong Fei Gao v. Sessions, 891 F.3d 67, 76 (2d Cir. 2018) (quotation marks omitted). To qualify for CAT protection, Chen must demonstrate that "it is 'more likely than not that he . . . would be tortured if removed to the proposed country of removal,'" though he need not draw a "nexus between the alleged torture and [his] membership in a protected group." Garcia-Aranda v. Garland, 53 F.4th 752, 758 (2d Cir. 2022) (quoting 8 C.F.R. § 1208.16(c)(2)).

"An applicant can generally prove that he is eligible for any of asylum, withholding of removal, or CAT relief based on nothing more than his own testimony, so long as that testimony is credible." Liang v. Garland, 10 F.4th 106, 113 (2d Cir. 2021). Conversely, where, as here, "the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief." Hong Fei Gao, 891 F.3d at 76.

"[W]e afford particular deference to the IJ's adverse credibility determination," Singh v. Garland, 6 F.4th 418, 426 (2d Cir. 2021) (quotation marks omitted), which may be based on "any inconsistencies, inaccuracies, or falsehoods, 'without regard to whether [the] inconsistency, inaccuracy, or

6

falsehood goes to the heart of the applicant's claim, or any other relevant factor,'" id. at 426–27 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Under the REAL ID Act, which applies to Chen's petition, an IJ must "evaluate each inconsistency or omission in light of 'the totality of the circumstances.'" Hong Fei Gao, 891 F.3d at 79 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Thus, an IJ can consider the applicant's demeanor, the inherent plausibility of the account, the internal consistency of the applicant's statements, the consistency between those statements and other evidence in the record, and any inaccuracies or falsehoods in the statements. See Liang, 10 F.4th at 113; see also 8 U.S.C. § 1158(b)(1)(B).

In making an adverse credibility finding, an IJ may also rely on the omission of important information from an applicant's asylum statement in a Form I-589. We have cautioned, however, that "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony." Singh, 6 F.4th at 428 (quotation marks omitted). The probative value of a particular omission depends on "whether [the omitted] facts are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances." Hong Fei Gao, 891 F.3d at 79. In part for this

reason, "petitioners are not required to list every incident of persecution on their I-589 statement." Liang, 10 F.4th at 114 (quotation marks omitted).

Although an IJ may rely on omissions and inconsistencies in assessing an applicant's credibility, not all omissions and inconsistencies deserve the same weight. "A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination." Hong Fei Gao, 891 F.3d at 77; see Singh, 6 F.4th at 427 (explaining that an adverse credibility finding cannot be based on "an inconsistency so trivial and inconsequential that it has little or no tendency to support a reasonable inference that the petitioner has been untruthful"). As we explained in Singh, "[o]missions are undoubtedly probative of untruthfulness in circumstances where the omission renders what is stated untrue or deceitful, but not necessarily so where the omission constitutes nothing more than non-inclusion of an inessential fact." 6 F.4th at 428. And when an applicant's testimony includes information that does not appear in his asylum statement but that supplements and is consistent with the statement, that information does not qualify as a material omission on which an IJ can rely in making an adverse

credibility determination. See Hong Fei Gao, 891 F.3d at 79; Gurung v. Barr, 929 F.3d 56, 61 n.1 (2d Cir. 2019).

As we further explained in Singh, an IJ's adverse credibility determination may sometimes rely on "multiple bases, some of which are erroneous and the remainder of which . . . satisfy the substantial evidence requirement." 6 F.4th at 427. When this happens, "several different dispositions are possible." Id. "Where the remaining grounds . . . are sufficiently probative of untruthfulness," we may "simply affirm the [agency's] ruling based on confidence that [it] would adhere to [its] adverse credibility finding notwithstanding disqualification of some of its asserted bases." Id. "[W]here it is clear that the agency would not adhere to the adverse credibility finding absent the errors identified on review," then we will set aside the agency's ruling. Id. (emphasis added). And where we "cannot confidently predict whether the agency would adhere to its credibility determination absent its errors," then we "remand for the agency to reconsider the question." Id.

**II.    Analysis**

Here, the IJ determined that Chen was not credible both because "his written asylum application statement" in his Form I-589 "omit[ted] any mention

9

of the police hitting him in the face and leg when he reported to the police station in October 2010, stating only that he was humiliated and insulted," and because Chen's testimony concerning his wife and cousin was internally inconsistent and contradicted by other evidence adduced at the removal hearing. Cert. Admin. Rec. 3. Relying on these inconsistencies and omissions, the IJ determined that Chen was not credible and ordered him removed. The BIA affirmed the IJ's order of removal on some of the same credibility grounds. On petition for review, Chen challenges the agency's denial of withholding of removal and CAT relief based on those findings.[1]

We conclude that the agency improperly relied on a number of trivial omissions and inconsistencies to find that Chen was not credible. First, the details Chen provided in his testimony about his encounter with the police at the police station were also referenced in his prior asylum statement. And even if they were not, they would merely supplement rather than contradict the asylum statement, and would thus not alone support an adverse credibility

---

[1] Chen also argues that his asylum application was timely filed. Because (1) an adverse credibility determination would foreclose the relief that Chen seeks, see Hong Fei Gao, 891 F.3d at 76, and the IJ, after reconsidering the question, might still conclude that Chen is not credible, see Singh, 6 F.4th at 427, and (2) Chen did not raise his timeliness argument before the BIA, we need not address whether Chen's asylum application was timely filed, see Steevenez v. Gonzales, 476 F.3d 114, 117 (2d Cir. 2007).

determination. Second, most if not all of the inconsistencies in Chen's

description of his relationship with his wife were trivial. Third, although any

inconsistencies relating to Chen's interactions with his cousin may be non-trivial,

we cannot "confidently predict" that the IJ would have made the same adverse

credibility determination based on those inconsistencies alone. We therefore

vacate and remand to the agency to make this determination in the first instance.

See Singh, 6 F.4th at 427.

### A.     The Police Station

We first consider the IJ's analysis of the inconsistencies and omissions

arising from Chen's testimony that he was beaten by officials at the police

station. During his removal hearing, Chen testified that the police officers kicked

him in the leg and hit his face when he reported back to the police station in

October 2010. Chen's asylum statement, by contrast, asserted only that the police

officers "humiliated and insulted" him when he reported back, without

mentioning that officers also kicked and hit him. Cert. Admin. Rec. 282 ("[E]ach

time I went to the [police] bureau, they humiliated and insulted me."). The IJ

reasoned that this omission undermined Chen's credibility. In the IJ's view,

"humiliated and insulted" and "kicked and hit" describe significantly different

11

conduct, and it is "reasonable to expect" that someone who was kicked and hit would specifically describe that conduct in their asylum statement. Id. at 48.

The IJ erred when it based its adverse credibility finding in part on the absence in Chen's asylum statement of a specific reference to being kicked and hit by police officers in October 2010. In portraying the failure to include that information as a material omission that undermined Chen's credibility, the IJ appears to have overlooked that throughout his removal hearing Chen equated being "hit" by the police with being "humiliated." For example, when asked why his asylum statement specified that officers "humiliated and insulted" him at the bureau, Chen answered, "I was locked up there. And I was interrogated six times. And each time they interrogated [me], they would beat me." Id. at 72. Chen also explained that his asylum statement did not specifically mention that he was beaten in October 2010 because "[t]hey kept on humiliating me." Id. at 103. Likewise, when the attorney for the Government asked Chen whether he had been beaten in October 2010, Chen answered, "Yes . . . [t]hey kept on humiliating me," and then physically demonstrated how officers hit his face. Id. at 107. Chen's asylum statement therefore does include a reference to the October 2010 beating.

In any event, even if the IJ had correctly interpreted Chen's asylum statement to not reference the beating, applicants are not obligated to list every example or incident of persecution in their asylum statements. See Liang, 10 F.4th at 114. Indeed, we have rejected adverse credibility determinations based on omissions from applications that were far more substantial than the omissions in this case. In Pavlova v. INS, 441 F.3d 82 (2d Cir. 2006), for example, Pavlova, a native and citizen of the Russian Federation, claimed in her application for asylum that she was subjected to violence by members of a Russian nationalist group (RNU) because of her Baptist faith, id. at 85. Pavlova's asylum statement "described her persecution in general terms," but omitted the fact that she had been raped and that some of her fellow Baptists had been killed. Id. at 90. Specifically, Pavlova's statement provided: "RNU members persecute me for my religion. They humiliated and beat me repeatedly. . . . I am scared to return to Russia because [RNU] people will kill me there." Id. Based in part on Pavlova's omission of the rape and killings, the IJ in that case determined that Pavlova was not credible and denied her applications for asylum, withholding of removal, and CAT relief. See id. at 87. The BIA summarily affirmed. Id. We concluded that the IJ "should not have faulted" Pavlova for omitting specific details from

13

her asylum statement that were later elicited during her direct testimony at a removal hearing. Id. at 90.

Even assuming the IJ in the case before us correctly determined that the asylum statement did not reference the October 2010 beating, we would be hard-pressed to distinguish Chen's case from Pavlova. We therefore conclude that the IJ erred in resting its adverse credibility determination in part on Chen's purported omission from his asylum statement of supplementary, non-contradictory details about being kicked and hit by police officers. See id.; see also Hong Fei Gao, 891 F.3d at 79.

The IJ also determined that part of Chen's testimony in which he recounted his detention by the police was internally inconsistent in two ways. First, although Chen initially testified that police officers "hit" his face, the IJ observed that Chen later testified that the officers "pushed" his face, Cert. Admin. Rec. 48, and then "again changed his testimony, stating that the police [officers] kept on shaking his head," id. (emphasis added). Second, the IJ noted, Chen testified that he was "interrogated six times and hit each time he was interrogated" during his initial detention in September 2010, but he later testified that he was hit only once in September and once in October. Id.

14

The IJ erred in concluding that Chen's testimony about the beatings was internally inconsistent because he variously used the words "hit," "push," and "shake." At the outset, we note that Chen never actually testified that police officers "pushed" him. Rather, when Chen began physically demonstrating the beatings while testifying, Chen's interpreter supplied the word "push" to describe Chen's actions for the record. See id. at 104. And even as he demonstrated the police's conduct by pushing his hand into his face, Chen explained that "you could call it being hit." Id. at 107. Moreover, we see no material inconsistency between Chen's use of the words "hit" and "shake" or in his demonstration of how police officers both hit his face and shook his head while beating him. In our view, the difference between "hit" and "shake" as Chen used those words during his removal hearing amounts to a "trivial difference[] in word choices" and should not have served as a basis for the IJ's adverse credibility finding, especially since Chin consistently demonstrated the action he was trying to describe. Gurung, 929 F.3d at 61.

Lastly, as for the number of times that police interrogated and hit him during his detention, Chen maintained that the police hit him several times in September 2010. At the conclusion of Chen's hearing testimony, however,

Chen's lawyer asked the following somewhat confusing question: "Now, you said that you were beaten by — or hit by the police only on September 15th and when you reported on October 15th. Were you hit by the police any other time during your detention, besides December [sic] 15th?" Cert. Admin. Rec. 124. Chen answered "No." Id. Because there is no other relevant reference to Chen being detained by police in December 2010, we understand the reference to "December" to be a transcription error. But the IJ may have in any event viewed Chen's response to such a confusing question to mean that Chen was hit only once in September 2010 and once in October 2010. That may not be an entirely fair interpretation of Chen's testimony, but we acknowledge that, under that interpretation, Chen's answer to the question conflicts with his earlier testimony that he was beaten several times during his detention in September 2010.

We therefore conclude that the IJ's adverse credibility determination was erroneous insofar as it relied on omissions from Chen's asylum statement and Chen's alternative uses of the words "hit" and "shake." Because the remaining possible inconsistency regarding the police beatings — that is, the number of times that Chen was beaten — is potentially non-trivial, we vacate and remand to the agency to reconsider its credibility determination under the "totality of the

16

circumstances" without relying on the errors (including the apparent transcription error) identified above. See Liang, 10 F.4th at 113.

**B.     Chen's Relationship with His Wife**

As additional support for the adverse credibility finding in this case, the IJ also identified three inconsistencies concerning Chen's relationship with his wife. First, Chen initially testified that he always practices Falun Gong with his wife, but later acknowledged that he sometimes practices without her. Second, while Chen testified that he and his wife had practiced Falun Gong together twice in the month leading up to his hearing, his wife testified that they had practiced together three times that month. And third, although Chen explained that he and his wife first met when he approached her to ask her questions about Falun Gong, she insisted that she was the one who initially approached him as part of her Falun Gong advocacy. These "de minimis, non-material inconsistenc[ies]," Pavlova, 441 F.3d at 90, on matters wholly unrelated to Chen's alleged persecution in China have "little or no tendency to support a reasonable inference that [he] has been untruthful," Singh, 6 F.4th at 427. The IJ thus erred in relying on these trivial inconsistencies to justify its adverse credibility determination.

## C. Chen's Phone Call with His Cousin

Finally, the IJ pointed to Chen's testimony about his phone call with his cousin as additional support for the adverse credibility determination. Chen initially testified that he called his cousin in August or September 2010 to coordinate his escape to the United States. He confirmed that he placed the call after he was arrested. When asked how he could have called his cousin in August if he was not arrested until September, Chen repeated that he called his cousin in August or September. Later during his testimony, however, Chen claimed that he called his cousin in October 2010. And still later, Chen suggested that he called his cousin in August or September 2010 not because he had been arrested and beaten, but because he "had heard people . . . say that doing Falun Gong in China could be reported on by others." Cert. Admin. Rec. 124. Chen also stated at one point in his hearing testimony that he "phon[ed]" his cousin to tell her he was coming to the United States, id. at 85, and at other points that he spoke to his cousin only after his cousin called his mother's house, id. at 102-03, 120-23; see also id. at 47.

The IJ did not err in considering these non-trivial inconsistencies in assessing Chen's credibility. As noted, however, the IJ's adverse credibility

18

determination rested on an assessment of the totality of the circumstances. Because it is not clear to us that the same decision would have been reached in the absence of the errors we have identified above, we decline to deny Chen's petition based on this non-trivial inconsistency alone. We therefore vacate and remand to the BIA to reconsider them under the "totality of the circumstances." Liang, 10 F.4th at 113.

*       *       *

For the reasons stated, we conclude that a number of the bases for the IJ's credibility determination were erroneous. Because we cannot "confidently predict" that the IJ would have made the same adverse credibility determination based on the inconsistencies regarding the September 2010 beatings at the police station and Chen's call with his cousin, we vacate and remand to the BIA. Singh, 6 F.4th at 427.

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED**, the BIA's decision is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this opinion. All pending motions and applications are **DENIED** and stays **VACATED**.

19