Belkaniya v. Garland

BIA
Hom, IJ
A087 985 206/207/208

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of August, two thousand twenty-three.

PRESENT:
> GUIDO CALABRESI,
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

TEMUR BELKANIYA, MARIKA NADIRADZE, NINA BELKANIYA,
> *Petitioners,*

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

20-789
NAC

_____

**FOR PETITIONERS:**     Alexander J. Segal, Esq., The Law Offices of Grinberg & Segal, P.L.L.C., New York, NY.

**FOR RESPONDENT:**     Jeffrey Bossert Clark, Acting Assistant Attorney General; Julia J. Tyler, Acting Senior Litigation Counsel; Elizabeth R. Chapman, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioners Temur Belkaniya ("Belkaniya") and his wife Marika Nadiradze, natives of the former Soviet Union and citizens of Uzbekistan, and their daughter, Nina Belkaniya, a native and citizen of Uzbekistan, seek review of a February 18, 2020 decision of the BIA, affirming a June 14, 2018 decision of an Immigration Judge ("IJ"), which denied Belkaniya's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1]  *In re Belkaniya*, No. A 087 985 206/207/208 (B.I.A. Feb. 18, 2020), *aff'g* No. A 087 985 206/207/208 (Immig. Ct. N.Y. City June 14, 2018).  Belkaniya asserted that he was persecuted and feared future persecution because he was gay, ethnically Georgian,

---

[1]  We primarily refer to Belkaniya because his wife and daughter were derivative applicants, and his daughter does not challenge the agency's decision that she was ineligible for derivative status following her marriage.

2

and an Orthodox Christian. We assume the parties' familiarity with the underlying facts and procedural history.

We review the decisions of both the IJ and the BIA. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review questions of law and the application of law to fact *de novo*, and review factual findings, including the agency's adverse credibility determination, for substantial evidence. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.   Credibility Determinations

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make

such an adverse credibility ruling." *Hong Fei Gao*, 891 F.3d at 76 (alteration adopted) (internal quotation marks and citation omitted). Where, however, there is an error in one of the bases for the adverse credibility determination, we remand unless we can be "confident that the agency would reach the same result upon a reconsideration cleansed of errors." *Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019). We grant Belkaniya's petition because we find error in the agency's consideration of one inconsistency and cannot be confident that the agency would draw an adverse credibility determination on the basis of the remaining inconsistencies.

The IJ relied on three inconsistencies in the record. One inconsistency concerned whether Belkaniya was summoned to an Uzbeki police precinct by phone or by mail for an investigation into his sexual orientation. At his hearing, Belkaniya testified that Uzbeki police summoned him to the police precinct by letter. But Belkaniya's asylum interview statements, as recorded in the asylum officer's summary, indicated that Belkaniya was summoned to the precinct by phone call. When presented with the interview record at his hearing, Belkaniya challenged the reliability of the summary. Although we have cautioned that the agency must "carefully . . . consider the reliability of asylum interviews," *Diallo v. Gonzales*, 445 F.3d 624, 632 (2d Cir. 2006), neither the IJ nor the BIA did so here. We agree with Belkaniya that the record does not foreclose the possibility that the

4

asylum officer, rather than Belkaniya, is responsible for the inconsistency, and that the IJ erred by relying on this alleged inconsistency without assessing the reliability of the asylum interview.

The agency relied on two other inconsistencies in finding that Belkaniya was not credible: when Belkaniya left his college in Georgia (including whether he graduated), and the exact date that he met his current boyfriend after arriving in the United States. Neither of these inconsistencies "alter[s] the overall timeline" of Belkaniya's account. *Mutoni v. Garland*, No. 19-4304, 2023 WL 4926203, at *1 (2d Cir. Aug. 2, 2023). Because we "cannot confidently predict whether the agency would adhere to the [credibility] determination" on the basis of these two inconsistencies, we "remand for the agency to reconsider the question." *Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021).[2]

## II. Asylum Claim

The agency's adverse credibility determination as to Belkaniya does not end

---

[2] We thus do not consider whether the agency erred by concluding that the country conditions evidence in the record did not establish a "pattern or practice" of discrimination because the Department of State's Country Conditions Reports on Uzbekistan for the years 2012, 2013, 2014, and 2015 stated that Uzbeki law criminalizing homosexual conduct was not enforced. *See* 8 C.F.R. §§ 1208.13(b)(2), 1208.16(b)(2). We note only that the Department of State's most recent Country Conditions Report for Uzbekistan indicates that the law *is* enforced, and notes several instances of individuals being prosecuted for same-sex sexual conduct. *Uzbekistan 2022 Human Rights Report*, at 34–35, U.S. STATE DEP'T (2022), https://www.state.gov/wp-content/uploads/2023/03/415610_UZBEKISTAN-2022-HUMAN-RIGHTS-REPORT.pdf.

the inquiry because the agency was required to (and did) consider whether there was other credible evidence supporting his asylum claim, such as Nadiradze's testimony about experiencing abuses with Belkaniya based on their shared religious identity as Orthodox Christians.

The IJ and the BIA concluded that Nadiradze's testimony was too vague to satisfy Belkaniya's burden for asylum based on religious persecution. Nadiradze testified that, on several occasions, she and Belkaniya were surrounded, insulted, and pelted with stones when attending church, and the police declined to intervene despite being present. Nadiradze's testimony was consistent with her husband's. The IJ found that Nadiradze's failure to identify her attackers and their motivation for throwing stones doomed Belkaniya's asylum claim. On review, the BIA agreed that the testimony was insufficient to meet Belkaniya's burden of proof because it was "generalized and lacking in detail," and because Nadiradze, in her testimony, admitted that neither she nor Belkaniya were injured in the attacks.

The agency's rejection of Nadiradze's testimony as too vague was error. "Testimony is too vague if it doesn't identify facts corresponding to each of the elements of one of the refugee categories of the immigration statutes." *Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 114 (2d Cir. 2005). Here, Nadiradze testified to

6

facts supporting each element of an asylum claim—that the family suffered persecution in the form of attacks pelting the family with stones on account of their membership in a religious group. We have accepted testimony that is nearly identical to Nadiradze's as sufficiently detailed to make out a claim of past persecution without requiring the petitioner to identify their assailants. *See, e.g.*, *Paul v. Gonzales*, 444 F.3d 148, 151 (2d Cir. 2006). And Nadiradze's testimony regarding the nature of the attacks was sufficient circumstantial evidence to show that the attacks were motivated by religion. *See Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005) (permitting circumstantial evidence to prove motive); *see also Aliyev v. Mukasey*, 549 F.3d 111, 116 (2d Cir. 2008) ("[A]n asylum applicant need not show with absolute certainty why the events occurred, but rather, only that the harm was motivated, in part, by an actual or imputed protected ground."). Nadiradze testified that the attacks occurred in the church parking lot, at the time that the church congregation exited the church, and targeted not just her and her husband, but also other church congregants. This evidence is sufficient to show that the attacks were motivated by Nadiradze's faith. *Cf. Quituizaca v. Garland*, 52 F.4th 103, 115 (2d Cir. 2022) (determining persecutors' motive by considering the timing of attacks and whether other members of the same protected group were also targeted). Accordingly, we cannot say that Nadiradze's testimony was too

vague to support a claim of past persecution.[3]

*   *   *

We have considered Belkaniya's remaining arguments and find them to be without merit.

The petition for review is GRANTED, the agency's decisions are VACATED, and the case is REMANDED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[3] While the agency mentioned the fact that the attacks did not injure Belkaniya and his wife, it did not base its decision on that fact. Accordingly, we need not and do not address that issue.