**YU QIAO WANG, Petitioner,**

**v.**

Alberto R. GONZALES,* Attorney
General, Respondent.

No. 03–41034–AG.

United States Court of Appeals,
Second Circuit.

May 9, 2006.

* Pursuant to Federal Rule of Appellate Proce-
dure 43(c)(2), Attorney General Alberto R.
Gonzales is automatically substituted for for-
mer Attorney General John Ashcroft as the
respondent in this case.

Fengling Liu, New York, New York, for Petitioner.

Chuck Rosenberg, U.S. Atty., Southern District of Texas, Daniel David Hu, Asst.

U.S. Atty., Houston, Texas, for Respondent.

PRESENT: Hon. JOHN M. WALKER, Jr., Chief Judge, Hon. JON O. NEWMAN, and Hon. ROSEMARY S. POOLER, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of this decision of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, the BIA's order is VACATED in part, and the case is REMANDED to the BIA for further proceedings in accordance with this decision.

Yu Qiao Wang, through counsel, petitions for review of the BIA's order affirming the decision of an immigration judge ("IJ") that denied Wang's claims for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture ("CAT"). Wang alleges that he was persecuted because of his opposition to China's coercive population policy. The IJ found Wang did not demonstrate eligibility for the relief he sought. We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, the BIA summarily affirms the decision of the IJ without issuing an opinion, this Court reviews the IJ's decision as the final agency determination. *see* 8 C.F.R. § 1003.1(e)(4); *Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005); *Yu Sheng Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 158 (2d Cir.2004). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 177–78 (2d Cir.

2004); *Secaida–Rosales v. INS,* 331 F.3d 297, 306–13 (2d Cir.2003).

In the present case, the IJ's decision hinges on his finding that Wang was not credible as to central elements of his claim—namely, that he was persecuted by family planning authorities who forcibly sterilized his wife, confiscated his land, and fined him excessively. That finding is, in turn, based on several enumerated reasons, none of which are supported by substantial evidence in the record.

■ First, the IJ erred by using Wang's airport interview to assess his credibility. Upon his arrival to the United States, Wang told the airport immigration officer that his wife's sterilization had occurred in 1992, but at his 2002 removal hearing, Wang testified that the government forcibly sterilized his wife in 1991. The IJ's use of the airport interview was not proper in assessing Wang's credibility. *See Ramsameachire,* 357 F.3d at 179 (the IJ should "examine each airport interview closely before concluding that it represents a sufficiently accurate record of the alien's statements to merit consideration whether an alien is credible"). The IJ did not explain whether it did, in fact examine the airport interview under the factors[1] laid out in *Ramsameachire. Id.* at 179–180.

■ Second, the IJ determined that Wang failed to submit corroboration as to the coercive nature of his wife's sterilization. The IJ stated that, in order to meet his burden, Wang had to demonstrate that his wife experienced a forced sterilization, rather than a voluntary sterilization. Wang testified that his wife had been "dragged away" by the cadres, taken to the town health clinic, and forcibly sterilized. He described what his wife had told him, to the extent that she remembered, about the anesthesia, the surgery, and the resulting numbness that she had experienced. Moreover, Wang stated that he and his wife were fined 5,000 RMB after the sterilization for having an extra child, and, one year later, their land was confiscated. In 1998, another sizeable fine was imposed upon Wang. Angered by the latter fine and unable to pay the full amount, Wang indicated that he had no other choice but to leave China. This testimony demonstrates that Wang violated the family planning policy and a series of punishments ensued. The record does not support the IJ's speculation concerning the sterilization; Wang met his burden to present prima facie evidence that his wife's sterilization was involuntary.

■ Third, the IJ also found Wang's testimony to be implausible concerning his claim that the government imposed an additional 25,000 RMB fine upon him in 1998, even though his wife's sterilization had occurred in 1991 and he had already been fined 5,000 RMB. The IJ also pointed out that Wang, who was articulate notwithstanding his lack of education, was not able to explain "with any type of specificity what this new policy that took place in

---

1. This Court has found that airport interviews have extreme limitations that should be considered. IJs and the BIA should particularly note that an alien is not generally represented by counsel at these interviews, and the aliens are often unfamiliar with United States immigration laws. *Ramsameachire,* 357 F.3d at 179. In *Ramsameachire,* this Court adopted several factors that should be considered in determining the weight of an airport interview, including: whether the questions asked are designed to elicit detailed information about an asylum claim, whether the officer asks follow-up questions to obtain a more detailed account of the alien's claim, whether the interview answers are summarized or written verbatim, whether the alien appears to be reluctant to speak because of experiences with government officials in his or her own country, and whether the alien appears to fully understand English or the translation. *Id.* at 180.

1998 was, and why he was angered over the policy."

These findings are not supported by substantial evidence in the record. When asked why he believed that the government had fined him in 1998, Wang initially answered, "[b]ecause the country government had a new policy ... They said you have overbirth, you did not have a spacing for four years between your birth, and so they ask me for 30,000 dollars—RMB." Wang subsequently testified that he did not understand the new policy, but that "it was related to the birth control policy, and policy of Communist party was like that." Wang testified that he was angry when he received the 1998 notification of the fine "[b]ecause [his] wife was already sterilize[d], and [he] was already fine[d], and out there came another fine...." Following this response from Wang, the IJ instructed counsel to move on with another line of questioning. Wang's ability to understand and articulate with "specificity" the intricacies of the change in the population control policy is not relevant to the fact that Wang was twice assessed a considerable fine. The IJ's finding here is based on impermissible speculation about why a man living in a rural area of China could not or would not pay a fine imposed by the government, and it cannot serve as a reason to find Wang incredible. *See, e.g., Secaida–Rosales,* 331 F.3d at 307, 312.

■ Fourth, the IJ found it implausible that Wang could not explain why his land was confiscated, aside from stating that it was because of the government's population control policy. The record shows the Wang lived in a rural area and had little education, and, as such, was not in a position to know exactly why and how the government punished violators of the family planning laws. The IJ's responsibility was not to ascertain the rationale of the government's policy decisions and subsequent changes, but rather to ask what had happened to Wang and whether he demonstrated a well-founded fear of future persecution.

■ Fifth, the IJ found incredible Wang's lack of knowledge as to the nature of the arrangement with the smugglers that had enabled him to depart China and relocate to Brazil. The IJ dismissed Wang's explanation that his relatives had finalized the details with the smugglers. As to his year and a half stay in Brazil, the IJ concluded that Wang "lived a peaceful life," and was troubled by Wang's failure to apply for asylum there. The IJ surmised that Wang left Brazil merely because he preferred to come to the United States. Finally, the IJ concluded that it was implausible that Wang could not provide the names of the individuals with whom he had lived in Brazil.

Wang testified that his residence, movement and employment, were controlled by the smugglers. Although he stated that he had a desire to live in the United States, Wang explained that he was unable to remain in Brazil because that had not been the arrangement with the smugglers. The IJ's findings are based on impermissible speculation about why Wang could not identify his roommates and whether he could have stayed in Brazil. Neither point undermines his persecution claim.

■■ Vacatur is appropriate here because, "the erroneous aspects of the IJ's reasoning are not tangential to the findings [he] made, and the evidence supporting [his] findings is not so overwhelming" as to make remand futile. *See Cao He Lin v. DOJ,* 428 F.3d 391, 406 (2d Cir.2005). Because Wang does not raise his CAT claim in his brief to this Court, that claim is deemed waived. *Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir. 2005).

For the foregoing reasons, we GRANT the petition, VACATE the BIA's decision in part, and REMAND to the BIA for further proceedings consistent with this decision. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).